IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| DIANA JAY, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> SPECIALIZED LOAN SERVICING, § <br> LLC, § <br> § <br> Defendant. § | Civil Action No. 4:19-cv-680-RWS-KPJ |

ORDER AND REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant Specialized Loan Servicing, LLC's ("SLS") Motion for Summary Judgment (the "Motion") (Dkt. 33), to which Plaintiff Diana Jay ("Plaintiff") filed a response (Dkt. 34) and SLS filed a reply (Dkt. 36). Further, SLS filed Objections (Dkt. 35) to Plaintiff's summary judgment evidence; Plaintiff did not file a response. *See* Dkt. 37. Having reviewed the arguments, evidence, and applicable authorities, the Court recommends that SLS's Motion (Dkt. 33) be **GRANTED**. The Court further orders that SLS's Objections (Dkt. 35) are **SUSTAINED IN PART** and **DENIED AS MOOT IN PART**.

I.  BACKGROUND

A.  UNDISPUTED FACTS

To finance her purchase of real property in Plano, Texas (the "Property"), Plaintiff obtained two mortgage loans. *See* Dkt. 33 at 10; Dkt. 34 at 5. At issue is whether SLS, the servicer of Plaintiff's second mortgage loan agreement (the "Second Loan Agreement"), defrauded Plaintiff. *See* Dkt. 33 at 15; Dkt. 34 at 5–8.

On April 11, 2005, Plaintiff and Option One Mortgage Corporation ("Option One") executed the Second Loan Agreement to finance Plaintiff's purchase of the Property. *See* Dkt. 33

at 11.[1] Through the Second Loan Agreement, Plaintiff borrowed a principal amount from Option One and agreed to pay back the principal and accrued interest in installments. *See* Dkt. 33-1 at 7–8. If Plaintiff failed to make timely payments, her payments would be considered in default. *Id.* at 9. Further, Section 17 of the Second Loan Agreement stated:

> This written Loan Agreement is the final agreement between you and me and may not be changed by prior, current, or future oral agreements between you and me. There are no oral agreements between you and me relating to this Loan Agreement. Any change to this agreement must be in writing. Both you and I have to sign written agreements.

*Id.* at 11.

The Second Loan Agreement is currently secured by a Deed of Trust. *See* Dkt. 33 at 11; Dkt. 33-1 at 36–42. Pursuant to the Deed of Trust, upon Plaintiff's payment of all amounts owed under the Second Loan Agreement, Option One shall release the Deed of Trust without charge to Plaintiff. *See* Dkt. 33-1 at 36, 39.

On October 5, 2005, approximately six months after executing the Second Loan Agreement, Plaintiff filed for Chapter 7 bankruptcy in the Eastern District of Texas. *See In re Jay*, No. 4:05-bk-46144, Dkt. 1 (Bankr. E.D. Tex. Oct. 5, 2005). During the bankruptcy proceeding, Plaintiff and Option One executed a Reaffirmation Agreement, whereby Plaintiff stated she wished to keep the Property, agreed to keep her account under the Second Loan Agreement current, and agreed that she would not sell or abandon the Property. *See* Dkt. 33-1 at 43–44. On January 29, 2006, the bankruptcy court discharged debts unrelated to the Second Loan Agreement, and Plaintiff's bankruptcy proceeding concluded. *See In re Jay*, No. 4:05-bk-46144, Dkt. 5 (Bankr. E.D. Tex. Jan. 29, 2006).

---

[1] Although Option One appears to be the lender for Plaintiff's first and second mortgage loans, *see* Dkt. 27 at 3, it is unclear whether SLS services the first mortgage loan.

Starting August 2007, Plaintiff stopped making payments under the Second Loan Agreement. *See* Dkt. 33 at 12; Dkt. 33-1 at 51–54. Nearly twelve years later, on July 9, 2019, SLS sent Plaintiff a notice, wherein SLS informed Plaintiff of her defaulted payments and SLS's intent to accelerate Plaintiff's payments under the Second Loan Agreement. *See* Dkt. 33-1 at 46–47. SLS warned that if Plaintiff did not pay her outstanding balance by August 11, 2019, SLS may seek foreclosure on the Property. *Id.* at 46.

### B.  DISPUTED FACTS

Plaintiff alleges that on or about September 2007, nearly two years after her bankruptcy case concluded, Plaintiff began working with a government program called "Hope Now" to modify her first mortgage loan. *See* Dkt. 27 at 3. Allegedly, a Hope Now representative advised Plaintiff to cease making payments on both mortgages. *Id.* In February 2008, Option One allegedly agreed to modify the first mortgage and advised Plaintiff not to make any payments on the first mortgage until the modification process was complete. *Id.* By December 2008, Plaintiff had modified her first mortgage, which prompted her to contact SLS to modify the Second Loan Agreement and resume making payments. *Id.* However, an SLS representative allegedly told Plaintiff that SLS could no longer accept payments, as SLS had allegedly converted the Second Loan Agreement into an unsecured debt and written the debt off for tax purposes. *Id.* Plaintiff allegedly found the SLS representative's explanation "difficult to believe" and requested to resume making payments under the Second Loan Agreement. *Id.* "However, [SLS's] representative informed her that they could no longer accept payments because the debts no longer existed." *Id.*

Approximately seven years later, in March 2015, Plaintiff allegedly contacted SLS again. *Id.* 4. During this alleged exchange, Plaintiff asked SLS whether it would continue enforcing the Second Loan Agreement. *Id.* An SLS representative allegedly confirmed that Plaintiff need not make payments under the Second Loan Agreement. *Id.*

3

In 2017, Plaintiff allegedly contacted SLS a third time. *See* Dkt. 34-1 at 6. Plaintiff allegedly spoke with "Laurie," who allegedly reaffirmed what Plaintiff was told in 2008 and 2015. *Id.*[2]

In May 2019, Plaintiff allegedly contacted SLS a fourth time. *See* Dkt. 27 at 4. An SLS representative allegedly informed Plaintiff that SLS would increase the balance she owed, given that interest had accrued since Plaintiff's bankruptcy proceeding concluded. *Id.* at 4–5. Plaintiff then referenced her previous alleged conversations with SLS, and the SLS representative informed Plaintiff that SLS "did not keep phone records that far back" and SLS would "move forward increasing the debt." *Id.* at 5.

SLS denies that it ever made the aforementioned representations to Plaintiff. *See* Dkts. 29, 35.

### C. PROCEDURAL HISTORY

On August 6, 2019, Plaintiff filed an Original Petition against SLS in the 380th Judicial District Court of Collin County, Texas. *See* Dkt. 1-1. SLS then removed the action to this Court, and Plaintiff filed a First Amended Complaint and a Second Amended Complaint. *See* Dkts. 1, 7, 27. Both the Original Petition and First Amended Complaint only asserted quasi estoppel as a

---

[2] The Court notes that Plaintiff's alleged 2017 phone call with "Laurie" first appears in Plaintiff's Declaration (Dkt. 34-1), which is submitted as part of Plaintiff's summary judgment evidence. Plaintiff's Second Amended Complaint only alleges phone calls occurred in 2008, 2015, and 2019. *See* Dkt. 27 at 3–4. Prior to the modern pleading rules, the rule against variance "committed" a plaintiff "unreservedly to a course of action and factual statement [in a pleading] from which [s]he could not deviate." ARTHUR R. MILLER, MARY KAY KANE & A. BENJAMIN SPENCER, 5 FEDERAL PRACTICE AND PROCEDURE § 1202 (3d ed.) (April 2021 Update). However, with the advent of the modern pleading rules, the rule against variance has been rejected and the courts regularly consider newly raised factual allegations at the summary judgment stage:

> One particularly important problem of admissibility [of affidavits filed as summary judgment evidence] is the question of relevance. Some early cases indicated that affidavits are admissible only to prove facts put in issue by the pleadings. These cases, however, are inconsistent with the contemporary view of the function of the pleadings and the rejection of the theory-of-the-pleadings doctrine as well as the former rules against variance. Therefore, an affidavit [offered at the summary judgment stage] should be excluded only when its irrelevance is clear.

10B MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2738 (4th ed.) (April 2021 Update). Because Plaintiff's alleged conversation with "Laurie" is relevant to this lawsuit, the Court will consider it. *See supra* Section III.A.

cause of action. *See* Dkts. 3, 7. SLS moved for judgment on the pleadings with respect to the First Amended Complaint, arguing that, under Texas law, quasi estoppel was not a freestanding cause of action. *See* Dkt. 12. The Court agreed, but granted Plaintiff leave to file a Second Amended Complaint. *See* Dkt. 24. Plaintiff timely filed the amended pleading, which asserts three causes of action: (1) common law fraud; (2) a violation of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE § 17.46; and (3) quasi estoppel. *See* Dkt. 27 at 5–10. Should SLS be found liable for these causes of action, Plaintiff seeks damages and a declaration voiding the Second Loan Agreement. *Id.* at 11.

On March 19, 2021, SLS filed the pending Motion for Summary Judgment (Dkt. 33). In support, SLS raises seven arguments: (1) other than offering inadmissible hearsay testimony, Plaintiff has not offered competent summary judgment evidence to establish a genuine dispute of material fact for her fraud claim; (2) the parol evidence rule precludes Plaintiff from prevailing on her fraud claim as a matter of law; (3) Plaintiff is not a consumer within the meaning of the DTPA as a matter of law; (4) other than offering inadmissible hearsay testimony, Plaintiff has not established a genuine dispute of material fact regarding her DTPA claim; (5) Plaintiff cannot assert quasi estoppel as a cause of action; (6) the economic loss rule precludes Plaintiff's recovery on her fraud claim; and (7) all of Plaintiff's claims are barred by their statute of limitations. *Id.* Plaintiff filed a response (Dkt. 34) and SLS filed a reply (Dkt. 36).

Attached to Plaintiff's response is her Declaration (Dkt. 34-1), to which SLS filed Objections (Dkt. 35). SLS's Objections argue that fourteen paragraphs in Plaintiff's Declaration constitute, among other things, inadmissible hearsay. *See* Dkt. 35. The Court ordered Plaintiff to file a response, if any, to the Objections by April 30, 2021. *See* Dkt. 37. To date, Plaintiff has failed to file a response.

## II. **LEGAL STANDARD**

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Davis v. Davis*, 826 F.3d 258, 264 (5th Cir. 2016). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the non-movant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show there is a genuine issue for trial. *Stults*, 76 F.3d at 656. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. LOCAL R. CV-

56. Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Evans v. Texas Dep't of Transp.*, 547 F. Supp. 2d 626, 636 (E.D. Tex. 2007) (citations omitted), *aff'd*, 273 F. App'x 391 (5th Cir. 2008). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23.

### III.  ANALYSIS

#### A.  SLS'S OBJECTIONS

In an effort to establish a genuine dispute of material fact, Plaintiff submits her Declaration, wherein she offers thirty-three paragraphs of testimony. *See* Dkt. 34-1. Much of Plaintiff's testimony concerns her alleged conversations with SLS representatives and, specifically, the SLS representatives' alleged instructions that Plaintiff abstain from making payments under the Second Loan Agreement. *See id.* In its Objections, SLS argues that fourteen paragraphs in the Declaration constitute inadmissible hearsay. *See* Dkt. 25.[3] The Court ordered Plaintiff to file a response, if any, to the Objections. *See* Dkt. 37. To date, Plaintiff has failed to file a response. Having reviewed the Declaration and objected-to paragraphs, the Court **SUSTAINS** SLS's Objections to Paragraphs 15, 19, 20, 21, 23, 24, 25, 27 and 30, as they constitute inadmissible hearsay. Because SLS's

---

[3] For many of the objected-to paragraphs, SLS also raises additional bases for excluding Plaintiff's testimony. *See, e.g.*, Dkt. 35 at 2 (objecting to Paragraphs 17, 18, 19, and 20 based on hearsay, lack of proper factual or evidentiary predicate, and inadmissible speculation or conjecture). Because the Court sustains SLS's Objections on the basis of inadmissible hearsay, the Court will not address SLS's other arguments.

Objections to the remaining five paragraphs are immaterial to the Court's analysis—regardless of whether the Court sustains or overrules them—they are **DENIED AS MOOT**.

"The issue at the summary judgment phase is not whether the parties have presented admissible evidence to support their motions for summary judgment, but whether they have shown that they will be able to present admissible evidence at trial." *BP Energy Co. v. Global Health Tech. Grp., LLC*, No. H-19-3243, 2020 WL 5947605, at *6 (S.D. Tex. Oct. 7, 2020) (citing FED. R. CIV. P. 56(c)(2)). Rule 56 generally requires that an affidavit or declaration used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. *See* FED. R. CIV. P. 56(c)(4).

Hearsay is a statement made by an out-of-court declarant offered to prove the truth of the matter asserted. *United States v. El-Mezain*, 664 F.3d 467, 494–95 (5th Cir. 2011). Hearsay contained in an affidavit or declaration is not competent summary judgment evidence unless an exception applies. *See Okoye v. University of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 510 n.5 (5th Cir. 2001); *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997); FED. R. EVID. 803 (enumerating hearsay exceptions, such as present sense impression, excited utterance, and public records); *see also Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (holding that, unless an exception applies, hearsay "counts for nothing" on summary judgment). Alternatively, a court may consider inadmissible hearsay if the offering party can show the hearsay declarant will testify directly to the matter at trial. *See Fernandez Cardona v. Garland*, No. 7:19-cv-2, 2021 WL 3148868, at *7 (S.D. Tex. June 22, 2021) (citing *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012)), *report and recommendation adopted*, 2021 WL 3144540 (S.D. Tex. July 26, 2021).

Additionally, there are certain out-of-court statements that are excluded from the definition of hearsay, which the Federal Rules of Evidence refers to as hearsay exclusions or nonhearsay, rather than hearsay exceptions. *See* FED. R. EVID. 801, 803. One such exclusion is known as the party-opponent admission. *See* FED. R. EVID. 801(d)(2). Under this exclusion, an out-of-court statement is not considered hearsay if (1) the statement is made by the opposing party's employee, (2) the statement touched on a matter within the scope of the employee-employer relationship, and (3) the statement was made while the employee-employer relationship existed. *See* FED. R. EVID. 801(d)(2)(D). The proponent must establish the preliminary facts that bring the statement within the ambit of the exclusion. *See Rhodes v. Wells Fargo Bank, NA*, No. 3:10-cv-2347, 2013 WL 2090307, at *6 (N.D. Tex. May 14, 2013) (citing *United States v. Richards*, 204 F.3d 177, 202 (5th Cir. 2000), *overruled on other grounds*, *United States v. Cotton*, 535 U.S. 625 (2002)).

Paragraphs 15, 19, 20, 21, 23, 24, 25, 27 and 30 of Plaintiff's Declaration aver that (1) in 2007, a Hope Now representative instructed Plaintiff not to make any payment until her loan modification process for her first mortgage loan was complete; (2) in 2008, an SLS representative told Plaintiff that her Second Loan Agreement had been converted into an unsecured debt, written off for tax purposes, and no longer existed; (3) in 2015, an SLS representative confirmed that the Second Loan Agreement had been written off, but a lien existed on the Property; (4) in 2017, an SLS representative named "Laurie" stated she need not make any payments, and (5) in 2019, SLS representative stated Plaintiff's debt to Option One still existed. *See* Dkt. 34-1 at 5–6. In response to SLS's Request for Admissions, Plaintiff admitted she never received any written communication stating the Second Loan Agreement was converted to an unsecured debt and written off for tax purposes, nor did Plaintiff ever receive any written communication stating she was released from the lien or that she need not pay the amount due thereunder. *See* Dkt. 33-1 at 48–51. Further, after reviewing the summary judgment evidence, the Court has not located a

9

deposition transcript of any SLS representative or the full name of "Laurie" and her position at SLS. Nor has the Court located any tax document from SLS or Option One demonstrating the Second Loan Agreement was written off.

As the party offering the testimony, Plaintiff bears the burden to show the proffered testimony is admissible. *See* FED. R. CIV. P. 56 Advisory Committee's Notes to 2010 Amendment ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."). She has not carried this burden for two reasons. First, after being instructed to file a response to SLS's Objections, Plaintiff failed to do so. *See* Dkt. 37. Under the Court's Local Rules, "[a] party's failure to oppose a motion . . . creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." LOCAL R. CV-7(e). Because the Court has received no response to SLS's Objections, there is a presumption that Plaintiff does not oppose the Objections and she can offer no evidence in opposition the Objections. *See id.* On this ground, the testimony offered in Paragraphs 15, 19, 20, 21, 23, 24, 25, 27 and 30 of Plaintiff's Declaration should be excluded. *See id.*

Second, Plaintiff has not carried her burden to show the hearsay exclusion for party-opponent admissions or that a hearsay exception applies. With respect to Plaintiff's alleged conversations with a Hope Now representative in 2007, the representative's out-of-court statements do not constitute a party-opponent admission, as Hope Now is not a party in this lawsuit. Therefore, the representative's out-of-court statements constitute hearsay. However, no discernable hearsay exception applies, and Plaintiff has not shown this hearsay declarant is available to testify directly to the alleged phone call at trial. *See Fernandez Cardona v. Garland*, No. 7:19-cv-2, 2021 WL 3148868, at *7–8 (S.D. Tex. June 22, 2021) (excluding hearsay testimony in affidavit, as no exception applied and offering party did not show hearsay declarant was

available to testify at trial), *report and recommendation adopted*, 2021 WL 3144540 (S.D. Tex. July 26, 2021). The statements from the government representative should be excluded.

With respect to the out-of-court statements made by unnamed SLS representatives in 2008, 2015, and 2019, as well as statements from "Laurie" in 2017, such statements are also inadmissible. Because Plaintiff has not identified the full names, job titles, assigned departments, or assigned divisions of these declarants, Plaintiff has not established the preliminary facts to show the party-opponent admission exclusion applies. *See, e.g.*, *Harrison v. Formosa Plastics Corp. Tex.*, 776 F. Supp. 2d 433, 440–41 (S.D. Tex. 2011) (finding party-opponent admission exclusion did not apply to testimony, as plaintiff failed to name declarant or list their job title); *Rhodes*, 2013 WL 2090307, at *3 (excluding affidavit testimony, as the affidavit summarily stated plaintiff "contacted Wells Fargo . . . and was told"; "Wells Fargo told me"; "I was informed by Wells Fargo"; and "Wells Fargo stated") (internal citations omitted); *Ingram v. Beneficial Fin., Inc.*, No. 3:13-cv-4037, 2015 WL 1443110, at *10 (N.D. Tex. Mar. 30, 2015) ("Plaintiff's declaration contains no information from which the court can determine whether she person she spoke with was an agent of Beneficial. Plaintiff fails to identify by name, company, title, department and/or division, the individual who allegedly made the statement to her about not being on the mortgage.").

Because Plaintiff has not shown the hearsay exclusion for party-opponent admissions applies, the proffered statements from the SLS representatives constitute hearsay. *See id.* Plaintiff has not argued a hearsay exception applies, nor does the Court discern one. The alleged statements from the SLS representatives cannot be considered to prove the truth of the matters asserted.

For the foregoing reasons, the Court concludes the out-of-court testimony in Paragraphs 15, 19, 20, 21, 23, 24, 25, 27 and 30 of Plaintiff's Declaration constitute inadmissible hearsay. These paragraphs are only admissible to demonstrate Plaintiff had conversations with

representatives from Hope Now and SLS in 2007, 2008, 2015, 2017, and 2019; they are not admissible to prove the truth of the matters asserted therein. *See Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 192 (5th Cir. 1990) (holding a written memo describing telephone conversation could only be admitted to show the conversation occurred, but otherwise constituted inadmissible hearsay). Therefore, to the extent Paragraphs 15, 19, 20, 21, 23, 24, 25, 27 and 30 constitute hearsay, SLS's Objections raised thereto are **SUSTAINED**.

### B. COMMON LAW FRAUD

SLS advances four arguments in support of summary judgment with respect to Plaintiff's fraud claim: (1) because Plaintiff has only offered inadmissible hearsay, she has not shown a genuine dispute of material fact to submit to a jury; (2) because the parol evidence rule prohibits oral modifications to the Second Loan Agreement, Plaintiff cannot prevail as a matter of law; (3) the economic loss rule bars Plaintiff's ability to recover on her fraud claim; and (4) Plaintiff's fraud claim was asserted outside the statute of limitations. *See* Dkt. 33. The Court concludes SLS's first argument warrants summary judgment, and the Court need not reach SLS's alternative arguments.

Under Texas law, the elements of common law fraud are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *See Saenz v. Gomez*, 899 F.3d 384, 391 (5th Cir. 2018) (quoting *In re FirstMerit Bank, NA*, 52 S.W.3d 749, 758 (Tex. 2001)).

As it stands, the only admissible summary judgment evidence Plaintiff can offer in support of her fraud claim is: (1) on April 11, 2005, Plaintiff executed the Second Loan Agreement and the Deed of Trust on April 11, 2005 with Option One; (2) SLS serviced Plaintiff's debt thereafter;

12

(3) Plaintiff spoke with SLS representatives in 2008, 2015, 2017, and 2019, and (4) Plaintiff has not made any payments under the Second Loan Agreement from August 2007 to the present. *See* Dkt. 33 at 11–12; DKt. 33-1 at 51–54; Dkt. 34-1. This evidence reflects that Plaintiff spoke with SLS representatives four times from 2008 to 2019. Without competent summary judgment evidence in support of the alleged material representation SLS made over the phone, or evidence that SLS made such representations recklessly or with the intent to deceive, there is no genuine dispute of material fact over any of the six elements for common law fraud. Summary judgment should be **GRANTED** with respect to this claim.

    **C.   DTPA**

As with Plaintiff's fraud claim, SLS raises multiple grounds in support of summary judgment. *See* Dkt. 33. Ultimately, the Court concludes Plaintiff is not a consumer within the meaning of the DTPA. Because this forms sufficient grounds to grant summary judgment, the Court does not address SLS's alternative arguments.

"The DTPA was enacted to protect consumers and allow recovery when certain deceptive acts cause economic damages." *Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 819 (5th Cir. 2020) (citing TEX. BUS. & COM. CODE § 17.50). To recover under the DTPA, the plaintiff must establish (1) the plaintiff is a consumer; (2) the defendant is a proper defendant under the DTPA; (3) the defendant violated the statute; and (4) the violation caused plaintiff's damages. *Id.* (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996)).

To qualify as a consumer under the DTPA, the plaintiff must (1) seek or acquire goods or services by purchase or lease and (2) show that the goods or services form the basis of the complaint. *Id.* (citing *Mendoza v. American Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App.—San Antonio 1996, no writ)). Whether a party qualifies as a consumer under the DTPA is a question of law. *See Henderson v. Wells Fargo Bank, NA*, 974 F. Supp. 2d 993, 1015 (N.D. Tex. 2013);

*Collums v. Ford Motor Co.*, 449 S.W.3d 189, 193 (Tex. App.—Houston [14th Dist.] 2014, no pet.). "Generally, a pure loan transaction lies outside the DTPA because money is not considered to be either a good or a service." *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 133 (Tex. App.—Corpus Christi-Edinburg 2001, no pet.). However, borrowers can qualify as consumers if they borrow money for the purpose of buying a good or service and their complaint concerns the good or service they purchased. *See Compass Bank v. Collier*, No. 09-19-1112-CV, 2020 WL 6494213, at *12 (Tex. App.—Beaumont Nov. 5, 2020, no pet.).

Here, the exception for borrowers does not apply: "[A] mortgagor challenging how an existing mortgage is serviced is not a consumer under the DTPA because the basis of the claim is the subsequent loan servicing activities and not any goods or services acquired in the original transaction." *Syphrett v. Nationstar Mortg. Co., LLC*, No. 09-18-451-CV, 2020 WL 6600973, at *17 (Tex. App.—Beaumont Nov. 12, 2020, no pet.); *see also Rojas v. Wells Fargo Bank, NA*, 571 F. App'x 274, 279 (5th Cir. 2014) (holding the plaintiff is not a consumer under the DTPA because "the basis of her claim is the subsequent loan servicing and foreclosure activities, rather than the goods or services acquired in the original transaction"). It is undisputed that Plaintiff's lawsuit arises from SLS's servicing and alleged representations made after the Second Loan Agreement was executed. *See* Dkt. 27; Dkt. 33 at 10–14. As a matter of law, Plaintiff is not a consumer under the DTPA. *See Syphrett*, 2020 WL 660973, at *17. Summary judgment should be **GRANTED** with respect to this claim.

### D.   QUASI ESTOPPEL

Finally, SLS seeks summary judgment on Plaintiff's quasi estoppel "claim." *See* Dkt. 33 at 23. SLS argues quasi estoppel is not a freestanding cause of action upon which relief can be granted. *Id.* Plaintiff contends that because she has asserted common law fraud and a DTPA violation against SLS, her quasi estoppel "claim" is no longer freestanding. *See* Dkt. 34 at 14–15.

Quasi estoppel, also known as estoppel by contract, is a term applied to certain legal bars, such as ratification, election, acquiescence, or acceptance of benefits. *Forney 921 Lot Dev. Partners I, LP v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied). Quasi estoppel prevents a party "from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects." *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 639–40 (5th Cir. 2007). The doctrine applies when it would be unconscionable to allow a party to maintain a position inconsistent with one to which the party acquiesced, or from which the party accepted a benefit. *See Cimarron Country Prop. Owners Ass'n v. Keen*, 117 S.W.3d 509, 511 (Tex. App.—Beaumont 2003, pet. denied).

As Texas courts have explained, quasi estoppel "is not a freestanding cause of action but a procedural device or affirmative defense." *Gil Ramirez Grp., LLC v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015) (citing *Deutsche Bank Nat'l Tr. Co. v. Stockdick Land Co.*, 367 S.W.3d 308, 311 (Tex. App.—Houston [14th Dist.] 2012, pet. denied)). Because quasi estoppel is defensive in nature, it is raised by a defendant as an affirmative defense, or by a plaintiff as a counter-defense to nullify an affirmative defense. *See, e.g.*, *Cimarron Country*, 117 S.W.3d at 511–13 (affirmative defense); *Baron v. Mullinax, Wells, Mauzy & Baab, Inc.*, 623 S.W.2d 457, 462 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.) (counter-defense). It cannot be raised as an affirmative claim. *See Cotton v. Texas Express Pipeline, LLC*, No. 6:16-cv-453, 2017 WL 3709093, at *5 (W.D. Tex. July 19, 2017) ("Because no affirmative claim for contractual estoppel or estoppel by acquiescence exists in Texas, Plaintiff fails to state a claim upon which relief may be granted."), *report and recommendation adopted*, 2018 WL 1419346 (W.D. Tex. Mar. 22, 2018).

Accordingly, Plaintiff's argument misunderstands the nature of quasi estoppel. Quasi estoppel is not a derivative cause of action like loss of consortium or loss of household services. *See Hermann Hosp. v. National Standard Ins. Co.*, 776 S.W.2d 249, 254 (Tex. App.—Houston

[1st Dist.] 1989, writ denied); *see also Allen v. Sherman Operating Co.*, — F. Supp. 3d —, No. 4:20-cv-290, 2021 WL 860458, at *3 (E.D. Tex. Feb. 18, 2021) ("Like loss of consortium, loss of household services is a derivative tort claim . . . '[A] plaintiff in a loss of consortium action cannot sue unless the underlying tort is proven.'") (citations omitted). Quasi estoppel can only be used to rebut an adversary's argument. *See Cotton*, 2017 WL 3709093, at *5. Thus, to the extent Plaintiff asserts quasi estoppel as an affirmative claim, summary judgment should be granted as a matter of law.

If Plaintiff asserts quasi estoppel as a counter-defense, summary judgment must also be granted. Plaintiff has offered no competent summary judgment evidence to create a genuine dispute of material fact. Plaintiff's admissible summary judgment evidence for quasi estoppel is the same as her admissible summary judgment evidence for common law fraud: (1) on April 11, 2005, Plaintiff executed Second Loan Agreement and the Deed of Trust on April 11, 2005 with Option One; (2) SLS serviced Plaintiff's debt thereafter; (3) Plaintiff spoke with SLS representatives in 2008, 2015, 2017, and 2019, and (4) Plaintiff has not made any payments under the Second Loan Agreement from August 2007 to present. *See* Dkt. 33 at 11–12; Dkt. 33-1 at 51–54; Dkt. 34-1. This evidence is insufficient to create a genuine dispute as to whether SLS took an inconsistent position regarding Plaintiff's obligations under the Second Loan Agreement. Therefore, regardless of whether Plaintiff asserts quasi estoppel as an affirmative cause of action or a counter-defense, summary judgment should be **GRANTED**.

### E.   SLS'S REMAINING ARGUMENTS

As set forth herein, summary judgment should be granted as to Plaintiff's fraud and DTPA claims. *See supra* Sections III.A, III.B. Summary judgment should also be granted as to Plaintiff's quasi estoppel "claim" or counter-defense. *See supra* Section III.C. Therefore, the Court need not reach SLS's alternative arguments. *See* Dkt. 33.

## IV.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends that SLS's Motion (Dkt. 33) be **GRANTED** and summary judgment be **ENTERED** as to all claims asserted in Plaintiff's Second Amended Complaint (Dkt. 27).

**IT IS FURTHER ORDERED** that SLS's Objections to Paragraphs 19, 20, 21, 23, 24, 25, 27 and 30 in Plaintiff's Declaration (Dkt. 34-1) are **SUSTAINED**. SLS's remaining Objections are **DENIED AS MOOT**.

Within fourteen (14) days after service of magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 29 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 23rd day of August, 2021.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE